UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NAZA COVIC,

                              **Plaintiff,**                        6:16-cv-00050 (BKS/TWD)

v.

ALLSTATE INDEMNITY COMPANY,

                              **Defendant.**
_____

**APPEARANCES:**

*For Plaintiff:*
Walter G. Pratt
Office of Walter G. Pratt
510 Higby Road
New Hartford, NY 13413

*For Defendant:*
Daniel W. Coffey
Bowitch & Coffey, LLC
17 Elk Street
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Naza Covic ("Covic") brings this action against Defendant Allstate Indemnity Company ("Allstate"), claiming that Allstate violated "the terms and conditions" of her insurance policy and breached the duty of good faith and fair dealing by failing to "further investigate and/or adjust" the property damage and loss to her house in Utica, New York, caused by a fire on October 20, 2014.[1] (Dkt. No. 19, ¶¶ 12-15). She seeks compensatory and

---

[1] While the Amended Complaint does not contain a separate section enumerating Covic's claims against Allstate (*see* Dkt. No. 22-1, ¶¶ 16-17), the pleading can fairly be read to assert breach of both the express terms of the

consequential damages. Presently before the Court is Allstate's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 22). For the reasons discussed below, Allstate's motion is granted.

## II.   FACTS

As part of its motion for summary judgment, Allstate filed a statement of material facts. (Dkt. No. 22-1). Covic did not respond to that statement. Under Local Rule 7.1(a)(3), the Court "shall deem admitted any properly supported facts set forth in the Statement of Materials Facts that the opposing party does not specifically controvert." Under these circumstances, the Court may accept Allstate's statement of material facts as true where appropriate, supported by the record, and unchallenged by Covic. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (explaining that "a party faced with a summary judgment motion may not rest upon the mere allegations or denials of the party's pleading and that if the party does not respond properly, summary judgment, if appropriate, shall be entered against him" (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988))); *Riehl v. Martin*, No. 13-cv-439, 2014 WL 1289601, at *5, 2013 U.S. Dist. LEXIS 186610, at *12 (N.D.N.Y. Dec. 19, 2013) ("Where, as here, a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true . . . to the extent they are supported by evidence in the record . . . ."), *report and recommendation adopted*, 2014 WL 1289601, 2014 U.S. Dist. LEXIS 42870 (N.D.N.Y. Mar. 31, 2014). Nevertheless, out of an abundance of caution, the Court has reviewed entire the record in this case. *See* Fed. R.

---

insurance policy and the implied covenant of good faith and fair dealing (*see* Dkt. No. 19, ¶ 14 (alleging that Allstate's denial of coverage "was and remains ***contrary to the terms and conditions of the policy***, and constitutes a breach of the defendant's duty of good faith and fair dealing under the policy" (emphasis added))). Allstate is an Illinois corporation; it removed this case from state court, invoking this Court's diversity jurisdiction. (Dkt. No. 1).

2

Civ. P. 56(c)(3) (stating that the court "may consider other materials in the record" not cited by a party).

### A. Purchase of the House

In October 2003, Covic bought a house located at 707 Cosby Road, Utica, New York (the "House"). (Dkt. No. 22-1, ¶¶ 40-41). She financed the purchase through a mortgage loan, which she paid off in 2015.[2] (*Id.* ¶ 42). Covic initially lived in the House with her two daughters; her son Adnan also lived there for a few months in 2008. (*Id.* ¶ 41).

### B. Covic's Insurance Policy

Covic initially bought insurance for the House from State Farm and later switched her coverage to Allstate in 2008. (*Id.* ¶ 43). Allstate mailed her a complete copy of the policy, which Covic kept. (*Id.*). In relevant part, the Allstate homeowner's insurance policy, which was last renewed for the period of October 21, 2013 to October 21, 2014, provided "Dwelling Protection" for the House, as well as "Personal Property Protection." (*Id.* ¶ 72; Dkt. 22-13, at 33; Dkt. No. 22-19, at 3, 4, 22-52). The policy, in relevant part, stated as follows:

> *Definitions Used In This Policy*
> 1. "**You**" or "**your**"—means the person named on the Policy Declarations as the insured and that person's resident spouse.
>
> . . . .
>
> 7. "**Residence Premises**"—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.
>
> . . . .

---

[2] In her affidavit in support of her opposition to Allstate's motion for summary judgment, Covic states that Allstate "has also refused to pay [her] mortgage company, First Source Credit Union, the sum owed on the mortgage of $18,198.26." (Dkt. No. 25-3, ¶ 10). The Court previously granted Allstate's motion to dismiss Plaintiff's claim for consequential damages other than those arising from the loss of use of her property. (Dkt. No. 18). Covic's Amended Complaint does not seek relief for First Source Credit Union. (*See* Dkt. No. 19). As such, the issue of First Source Credit Union's right to payment is not properly before this Court. *See Bonnie & Co. Fashions v. Bankers Tr. Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997) (pointing out that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment").

12. "**Dwelling**"—means a one, two, three or four family **building structure**, identified as the insured property on the Policy Declarations,[3] where **you** reside and which is principally used as a private residence.

. . . .

*Insurance Agreement*

In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms, and inform **us** of any change in title, use or occupancy of the **residence premises**.

. . . .

*Coverage A*
*Dwelling Protection*

*Property We Cover Under Coverage A*

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

(Dkt. No. 22-1, ¶ 73; Dkt. No. 22-19, at 24-26, 28). The policy, however, excluded coverage for loss to property "consisting of or caused by . . . [a]ny substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**." (Dkt. No. 22-1, ¶ 73; Dkt. No. 22-19, at 29, 35). Additionally, the policy contained a clause stating that "[n]o suit or action may be brought against [Allstate] unless there has been full compliance with all policy terms." (Dkt. No. 22-1, ¶ 73; Dkt. No. 22-19, at 42).

### C. Rental of the House and Move to North Carolina

In 2012, Covic listed the House for sale with a real estate company. (Dkt. No. 22-13, at 16). She found a buyer and moved out of the House and into an apartment in Utica, taking all her

---

[3] The location of the insured property listed on the policy declarations was "707 Cosby Rd, Utica, NY 13502-1421," which is the address of the House. (Dkt. No. 22-19, at 3).

4

House furniture with her, in or before September 2012. (Dkt. No. 22-1, ¶¶ 44-45; Dkt. No. 22-13, at 14, 26, 43). Covic did not inform Allstate that she had moved out of the House. (Dkt. No. 22-1, ¶ 47). The buyer, however, ultimately declined to proceed with the purchase. (Dkt. No. 22-1, ¶ 45). At this juncture, Covic decided to rent out the House and listed it on the Internet. (*Id.* ¶¶ 44-45). She found a tenant, who signed a two-year lease and rented the House from September 2012 to October 1, 2014. (*Id.* ¶¶ 46, 48). Covic did not inform Allstate that she was renting the House to a third party. (Dkt. No. 22-13, at 29).

At some point during that period, Covic moved to Concord, North Carolina, to live with her daughter. (*Id.* ¶¶ 51-54). She took her furniture from Utica to North Carolina (Dkt. No. 22-13, at 43), obtained a North Carolina driver's license listing the Concord address (Dkt. No. 22-1, ¶ 54), registered her car in North Carolina (*id.*), and had her mail forwarded to her new address (Dkt. No. 22-13, at 48). Covic did not inform Allstate that she had moved out of state. (Dkt. No. 22-1, ¶ 52). When she was not living in North Carolina, she stayed at her other daughter's house on Walker Road in Utica. (*Id.* ¶ 51; Dkt. 22-13, at 19-20; Dkt. No. 22-12, ¶ 2). In 2014, Covic spent approximately five months in North Carolina and the rest of the year in Utica, at her other daughter's house. (*Id.* ¶ 51). While the Allstate insurance policy was in effect, from October 21, 2013 to October 21, 2014, Covic never stayed at the House overnight. (Dkt. No. 22-1, ¶ 55; Dkt. No. 22-12, ¶¶ 2, 3).

### D.     October 20, 2014 Fire at the House

On September 30, 2014 or October 1, 2014, the tenant moved out of the House and discontinued the water and power service. (Dkt. No. 22-1, ¶¶ 59, 60; Dkt. No. 25-1, ¶¶ 3, 4). Covic, who had returned to Utica from North Carolina, received the keys from the tenant and had the water service turned back on October 3, 2014. (Dkt. No. 25-1, ¶¶ 4, 5). No one lived at the House after October 1, 2014 (Dkt. No. 22-1, ¶ 62), and Covic did not have any personal

5

possessions there (Dkt. No. 22-1, ¶ 68). Covic and her son planned to move back into the House around October 30, 2014, after performing cleaning and repairs. (Dkt. No. 22-1, ¶¶ 62, 64; Dkt. No. 22-13, at 23; Dkt. No. 25-2, ¶ 6; Dkt. No. 25-4, ¶ 6).

On October 20, 2014, Covic's son had the electricity turned back on in order to complete repairs at the House. (Dkt. No. 22-1, ¶¶ 61; Dkt. No. 25-2, ¶ 7; Dkt. No. 25-4, ¶ 7). About thirty minutes later, the House caught fire. (Dkt. No. 22-1, ¶ 61; Dkt. No. 25-2, ¶ 7). A neighbor called Covic's daughter in North Carolina to tell her about the fire, who then notified Covic's son. (Dkt. No. 25-3; Dkt. No. 25-5, ¶ 8). When Covic's son arrived at the House, the fire department was already there. (Dkt. No. 25-5, ¶ 9). Covic, who had returned to North Carolina, learned about the fire from her son.[4] (Dkt. No. 22-13, at 30; Dkt. No. 25-1, ¶ 2). Covic's attorney subsequently hired a public adjuster, who assessed the amount of the property damage at approximately $115,659.94.[5] (Dkt. No. 22-1, ¶ 67).

### E.    Coverage Denial[6]

On October 23, 2014, Covic's son notified Allstate of the fire. (Dkt. No. 22-18, ¶ 13; Dkt. No. 25-5, ¶ 10). An Allstate adjuster investigated Covic's claim and determined that the policy did not provide coverage because Covic (1) had not lived at the House for over a year prior to the fire; (2) rented the premises to a third party for two years; and (3) failed to inform Allstate of

---

[4] Allstate's statement of material facts states that Covic "learned about the fire when her daughter called Ms. Covic in North Carolina." (Dkt. No. 22-1, ¶ 65). At her deposition, Covic testified that she learned the news from her son. (Dkt. No. 22-13, at 30). Although it is unclear who called Covic in the first place, (*id.* at 30), to the extent this constitutes a question of fact, it is immaterial.

[5] The Amended Complaint further alleges that Covic "is entitled to a supplemental claim for $16,337.21 upon completion of the repairs and replacement of damaged areas of the property." (Dkt. No. ¶ 7). That figure also appears to have been assessed by the public adjuster. (Dkt. No. 22-12, ¶¶ 12-13).

[6] The facts concerning the claim's investigation and denial are drawn from the affidavit of Matthew D'Angelo in support of summary judgment. (Dkt. No. 22-18). Although Covic does not dispute that Allstate investigated and denied the claim, (*see* Dkt. No. 19, ¶ 11), she takes issue with Allstate's alleged refusal "to *further* investigate and/or adjust the property damage and loss." (*Id.* ¶ 12 (emphasis added)).

6

these developments. (Dkt. No. 22-18, ¶ 17). The adjuster recommended denial of the claim. (Dkt. No. 22-18, ¶ 18). Another Allstate employee reviewed the claim file and agreed with the adjuster's recommendation. (Dkt. No. 22-18, ¶ 22). Based on this recommendation, Allstate sent Covic a denial letter on November 13, 2014. (Dkt. No. 22-18, ¶ 24).

### III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-

moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).

## IV. DISCUSSION

### A. Express Terms and Conditions of Insurance Policy

Allstate argues that the insurance policy did not cover the claimed loss because the policy only covered certain premises where Covic resided, and Covic did not reside at these premises at the time of the fire. (Dkt. No. 22-22, at 7-8). Given the plain terms of the insurance policy and the undisputed facts, the Court concludes that Allstate is entitled to summary judgment.

Under New York law,[7] "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning," *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007), and their construction "presents a question of law to be determined by the court when the only issue is whether the terms as stated in the policy apply to the facts," *Raino v. Navigators Ins. Co.*, 269 A.D.2d 419, 419-20 (2d Dep't 2000). Insurance policy provisions are unambiguous if their words have "a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978). "If the terms of a policy are

---

[7] In line with their briefing at the motion-to-dismiss stage (*see* Dkt. No. 18, at 6 n.4), the parties' summary judgment briefing proceeds on the assumption that New York law applies (*see* Dkt. Nos. 22, 25, 26). This shared premise is "sufficient to establish the applicable choice of law." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 n.4 (2d Cir. 2001).

ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer." *White*, 9 N.Y.3d at 267.

The Allstate homeowner's insurance policy provides coverage, in relevant part, for the insured's "dwelling," a term it defines as a "building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence." (Dkt. No. 22-19, at 26, 28 (emphases omitted)). The policy further specifies that the location of the insured property is 707 Cosby Road, Utica, New York, which is the address of the House. (Dkt. No. 22-19, at 3). Thus, coverage for the fire loss turns on whether Covic resided at the House at the time of the fire. (*See* Dkt. No. 22-22, at 7-8; Dkt. No. 25, at 2). Neither party disputes the underlying facts, notably that: Covic moved out of the House with her furniture around September 2012; Covic rented the House to a third party from September 2012 to September 2014; Covic moved to North Carolina during that time, while spending part of the year at the house of her daughter in Utica; the tenant moved out of the House approximately at the end of September 2014 or beginning of October 2014; no one stayed at the House from October 1, 2014 to October 20, 2014; and Covic and her son planned to move back into the House after some cleaning and repairs. (*See* Dkt. No. 22-1, ¶¶ 45-65; Dkt. No. 25-1, ¶¶ 2-7; Dkt. No. 25-4, ¶¶ 5-7). But the parties disagree on whether these facts are sufficient to establish as a matter of law that Covic did not reside at the House at the time of the fire.

The Allstate policy does not define the term "reside." But the term is unambiguous in the context of the policy, which covers "your dwelling," defined as "where you reside and which is principally used as a private residence." (Dkt. No. 22-19, at 26, 28). Unless otherwise defined, the term "residence" in insurance contracts "is to be given its 'plain, ordinary, and popularly understood sense.'" *Canfield v. Peerless Ins. Co.*, 262 A.D.2d 934, 934-35 (4th Dep't 1999)

9

(quoting *Michaels v. City of Buffalo*, 85 N.Y.2d 754, 757 (1995)). It refers to "something more than temporary or physical presence and requires at least some degree of permanence and intention to remain," *N.Y. Cent. Mut. Fire Ins. Co. v. Kowalski*, 195 A.D.2d 940, 941 (3d Dep't 1993), although not necessarily the intent "to make that place a 'fixed and permanent home,' i.e., a domicile," *Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.*, 27 N.Y.3d 186, 192-93 (2016) (quoting *In re Estate of Newcomb*, 192 N.Y. 238, 250 (1908)).

It is undisputed that Covic moved out of the House in or before September 2012 and never stayed there overnight in either 2013 or 2014. (Dkt. No. 22-1, ¶ 45; Dkt. No. 22-12, ¶¶ 2, 3). It is also undisputed that, in the interim, Covic moved into her daughter's house in North Carolina, transferred her furniture, forwarded her mail, and obtained a North Carolina driver's license at that out-of-state address. (Dkt. No. 22-1, ¶¶ 51-55; Dkt. No. 22-13, at 43, 48). Further, when Covic was in Utica, she did not stay at the House, but instead stayed at the house of her other daughter. (Dkt. No. 22-51). Because Covic did not live at the House at any time during the term of the policy, she fails to satisfy the core requirement of residence. *See Metro. Prop. & Cas. Ins. Co. v. Pulido*, 271 A.D.2d 57, 58, 60-61 (2d Dep't 2000) (holding that, where coverage was for "a one-family dwelling used as a private residence" by the insured, the policy was "only intended to afford coverage for places where the insured live"); *cf. also Walburn v. State Farm Fire & Cas. Co.*, 215 A.D.2d 837, 838-39 (1995) (concluding that the insured was no longer residing at the property covered by his insurance policy after he moved out, took "his clothing and furniture . . . with him," lived at a different property "for more than 14 months prior to the accident," received his mail at the new address, and listed the new address on his motorcycle and hunting licenses).

Covic's intent to move back into the House at the end of October 2014, approximately 10 days after the fire, does not create a triable issue of fact. *See Vela v. Tower Ins. Co. of N.Y.*, 83 A.D.3d 1050, 1051 (2011) (holding that an insured's "mere intention to reside at the premises was insufficient to satisfy the policy's 'residence premises' requirement"). Even viewed in the light most favorable to Covic, at most this indicates that she intended the House to be her future residence. There is no evidence that, as of October 20, 2014, when the fire occurred, Covic had reestablished her residence at the House. And while Covic affirms that she "t[ook] back possession of the house on September 30, 2014," (Dkt. No. 25-2, ¶ 4), she admits that no one lived at the House at any time between October 1 and October 20, 2014, (Dkt. No. 22-1, ¶ 58).

In their submissions, the parties spar about the import of *Page v. Nationwide Mutual Fire Insurance Co.*, 15 A.D.2d 306, 307 (3d Dep't 1962). Allstate cites the case for the proposition that "the mere renovation of a house with no one staying there during the process does not make out occupancy." While Covic points out that in *Page* the court ruled in favor of the insured, the ruling was based upon the insured's presence at the premises. The case concerned a policy provision excluding coverage for losses occurring while the building was "vacant or unoccupied beyond a period of sixty consecutive days." *Id.* The court observed that "[i]t is the regular presence of inhabitants that makes occupancy" and determined that the insured's "three days of such presence" in the house "for sleeping and eating and working purposes" suffices "to break the 60-day chain of unoccupancy which had occurred." *Id.* Although *Page* concerned the meaning of occupancy, not residence, in insurance contracts, the New York Court of Appeals has opined that "it is arguable that the reasonable expectation of an average insured is that occupancy of the premises would satisfy the policy's requirements" concerning residence. *Dean v. Tower*

11

*Ins. Co. of N.Y.*, 19 N.Y.3d 704, 709 (2012) (citation omitted).[8] In *Dean*, the insured had presented evidence of occupancy during repairs to the house, such as being present at the property five days a week, eating, and occasionally sleeping there. *Id.* at 708. Consequently, there existed issues of fact concerning the insured's occupancy of—and arguably residence at—the property. *Id.* at 708-09. However, in sharp contrast to the situations in *Page* and *Dean*, there is no evidence in the present record indicating that the House was occupied from the time the tenant vacated the premises to the time of the fire. Indeed, both parties agree that the premises were vacant and unoccupied between October 1 and 20, 2014.[9] (Dkt. 22-1, ¶ 59; Dkt. No. 25, at 2 (Covic acknowledging that the premises were vacant)). Accordingly, the Court concludes as a matter of law that Covic did not reside at the House when the fire occurred and that Allstate was justified in denying coverage for the fire loss.[10]

### B.  Implied Covenant of Good Faith and Fair Dealing

In addition to her claim that Allstate breached the express terms of the policy by its "refusal to investigate and/or adjust the property damage and loss," Covic claims that this same refusal breached the duty of good faith and fair dealing. (*See* Dkt. No. 19, ¶¶ 13-14). New York

---

[8] In dissent, Judge Jones criticized the majority's conflation of the two concepts. *See id.* at 711 (Jones, J., dissenting) ("The terms 'reside' and 'occupy' should not be conflated to circumvent the governing terms of the policy . . . . The issue is plainly whether the property was a 'residence premises . . . .'").

[9] Relying on *McCarthy v. New York Property Insurance Underwriting Ass'n*, 158 A.D.2d 961 (4th Dep't 1990), Covic argues that the policy exclusion should not apply because "[v]acancy for repairs and cleaning does not void coverage under a fire insurance policy." (Dkt. No. 25, at 3). But *McCarthy* involved a policy provision expressly stating that "a building . . . in the course of construction or repair and construction . . . shall not be deemed 'vacant or unoccupied.'" *McCarthy*, 158 A.D.2d at 962. There is no such express exception for repairs in the Allstate policy.

[10] Allstate advances two additional arguments as to why the express terms of the policy do not cover Covic's loss: (1) the policy required notification of changes in use and occupancy of the insured premises, but Covic did not notify Allstate that she had rented out the premises and later left them unoccupied (*id.* at 8-11); and (2) the policy excluded coverage when there was a "substantial change or increase in hazard," and Covic's rental of the premises and leaving them vacant constituted such a change (*id.* at 7). Because the residence issue is dispositive, the Court need not reach these additional arguments.

law, however, does not "recognize a separate cause of action for breach of the implied covenant of good faith and a breach of contract on the same facts." *Kalter v. Hartford Ins. Co. of the Midwest*, 24 F. Supp. 3d 230, 234 (E.D.N.Y. 2014). Even assuming that the implied covenant claim is not duplicative, it fails as a matter of law for the reasons discussed below.

        1.    **Failure to Investigate**

Under New York law, a covenant of good faith and fair dealing is implied in every contract. *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). In the insurance context, this implied covenant incorporates the insurer's implied "promises to investigate in good faith and pay covered claims." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995). However, "no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" *Dalton*, 87 N.Y.2d at 389 (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)).

Covic claims that Allstate's "refusal to investigate and to adjust the property damage and loss" constitutes a breach of Allstate's duty of good faith and fair dealing. (*See* Dkt. No. 19, ¶ 14). Allstate has proffered portions of Covic's claim file and its denial letter dated November 13, 2014, which detail the result of Allstate's investigation and the reasons for the denial. (Dkt. No. 22-20; Dkt. No. 22-21). Covic does not dispute that she received the letter; rather, she contests the merits of the claim denial. As discussed above, however, the denial is justified based on the express terms of the policy. Accordingly, Allstate did not breach the implied covenant when it refused to further investigate and adjust an uncovered claim.

        2.    **Failure to Advise of Policy Terms**

To the extent that Covic's implied covenant claim rests on Allstate's alleged failure to advise her of the policy's terms—an alleged duty that Covic ties to English being her second

language (Dkt. No. 19, ¶¶ 20, 21, 23; Dkt. No. 25-3, ¶ 10)—it also fails as a matter of law. Insureds are conclusively presumed, absent fraud or other wrongful act, to know the terms of their insurance policy. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . . .'" (quoting *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920))); *Stone v. Rullo Agency, Inc.*, 40 A.D.3d 1185, 1186 (3d Dep't 2007) ("Once plaintiff received the policy, he was presumed to have known its contents—including its exclusion of certain types of personal property from replacement value coverage—and to have assented to them."). Covic has not alleged any fraud or other tortious wrong committed by Allstate, and she does not dispute that she received a complete copy of her insurance policy. (Dkt. No. 22-1, ¶ 43). Therefore, Covic is conclusively presumed to have known the policy's terms. Allstate cannot be held liable for Covic's failure to acquaint herself with those terms.

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Allstate's motion for summary judgment (Dkt. No. 22) is **GRANTED** in its entirety; and it is further

**ORDERED** that Covic's amended complaint (Dkt. No. 19) is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Dated: September 25, 2017
    Syracuse, New York

Brenda K. Sannes
U.S. District Judge